**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ARIOSTE MONCION,<br><br>         Petitioner,<br><br>v.<br><br>TERRENCE MOORE, Superintendent,<br>New Jersey State Prison, and<br><br>ANNE MILGRAM,<br>Attorney General of New Jersey<br><br>         Respondents. | CIVIL ACTION NO.<br>04-3072 (JAG)<br><br>**OPINION** |

**SHERIDAN, U.S.D.J.**:

      Before the Court is Arioste Moncion's ("Moncion") application for a writ of *habeas corpus* pursuant to provisions of the Antiterrorism and Effective Death Penalty Act of 1996, specifically 28 U.S.C. § 2254.  Three of the claims raised by the petitioner were not raised in the state court proceedings below; however, this Court shall proceed pursuant to 28 U.S.C. § 2254(b)(2).[1]  For the following reasons, we deny Mr. Moncion's petition for *habeas corpus* relief.

---

[1] "An application for a writ of *habeas corpus* may be denied on the merits, not withstanding the failure of the applicant to exhaust the remedies available in the courts of the state."  28 U.S.C. § 2254(b)(2). It is the Court's preference to deny this petition on the merits, pursuant to 28 U.S.C. §2254(b), when "it is perfectly clear that an applicant does not raise even a colorable federal claim." *Abdullah v. Moore*, 2005 WL 2033679 (D.N.J. 2005) citing *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir.1997)

## FACTS

The New Jersey Superior Court, Appellate Division set forth a detailed summary of the facts in this case in their unpublished opinion during the petitioner's initial appeal from his trial.[2]   The following is a recitation of the relevant facts from that opinion.  On the morning of May 12, 1995[3], the petitioner engaged in a fist fight with Dewey Manning that was broken up by Tyrone Bell.  Later that afternoon, an argument ensued between the petitioner, Manning, and Manning's friend Edward Sykes.  Then, between 4:30 and 5:00 p.m., the petitioner, while carrying a baseball bat, met Sykes who approached the petitioner with a black revolver.  The petitioner fled the situation and returned to his home.  Around midnight that evening, the petitioner challenged Manning, who was standing on a porch with Bell on Flora Street, to continue their earlier fist fight.  Manning refused, and after an exchange of words, Manning threw a folding chair at the petitioner.  Manning then ran to Sykes's home at 1034 Flora Street and the petitioner followed.  Manning kicked the petitioner when the petitioner reached Sykes's porch and the petitioner in return punched Manning.  The fight continued for approximately five minutes according to witnesses, and Manning walked to the rear of Sykes' property when it was over.  The petitioner remained in front of Sykes's residence pacing back and forth according to Bell.  Bell, believing that the petitioner was looking for something, found a

---

[2]Unless otherwise noted, the facts were taken from *New Jersey v. Moncion*, No. A-4619-96T4 (N.J. Super. Ct. App. Div. Dec. 30, 1998).

[3]The Appellate Division said these events took place on May 11, 1995.  *New Jersey v. Moncion*, No. A-4619-96T4, at 3.  However, the trial transcripts suggest they took place on May 12, 1995 (Ra 16, 28:21).  The appellate court also used the May 12 date in the subsequent opinion corresponding to the PCR hearing.

handgun and gave it the petitioner.[4]  The petitioner put the gun in the front pocket of his pants, and as he walked away, Bell noted that the petitioner had at least one other gun in his rear pants pocket.

Meanwhile, Manning went inside Sykes's home and both Manning and Sykes came out of the house where they saw the petitioner standing with a group of individuals near 1038 Flora Street. Sykes, while holding his hands up and away from his body, approached the petitioner to ask him "what's up?"[5]  The petitioner responded by pulling at least one gun out of his pocket.  Sykes and Manning turned and began to run toward a house at 1034 ½ Flora Street.  The petitioner fired a shot. He then fired two additional shots as the victims tried to climb up the steps of the house.  The first of these killed Sykes instantly while the second bullet missed both victims.[6]  Witnesses testified that

---

[4]The New Jersey Superior Court, Appellate Division's opinion following the PCR Hearing read the record to say that Anthony Brown, who was visiting Sykes that day, handed the gun described to the petitioner.  *New Jersey v. Moncion*, No. A-6387-00T4 (N.J. Super. Ct. App. Div. Nov. 12, 2003).  Since the petitioner makes no issue with this discrepancy and since it is not outcome-determinative to this case, this Court will not discuss this issue further.

[5](Ra 2, T25:4)

[6]Anthony Brown testified that it was Moncion who "had his arm extended out pointing a gun toward the direction of Dewey [Manning] and my brother . . . ."  (Ra 2, 29:3-4).  He also testified that "[t]wo more shots after the first shot was fired."  (Ra 2, 30:1).
During Tyrone Bell's testimony, the following colloquy took place:

| | |
|---|---|
| Q | What was the next thing that happened after you see Dog walking away? |
| A | J.R. [Moncion] shot at him one time. |
| Q | Where were you looking when the shot went off? |
| A | I was looking at J.R. |
| Q | You see him fire the gun? |
| A | Yeah. |

(Ra 4, 23:2-8)
Later in Mr. Bell's testimony, the colloquy was as follows:

| | |
|---|---|
| Q | What was the next thing that happened? |
| A | Dog started running and as he started running, he shot two more times, like boom, boom (indicating), like that. |
| Q | You're holding your hand, who was shooting at that time? |
| A | J.R. shooting, bang, bang, like that. |

the defendant was running from the scene following these shots.

A jury for the Superior Court of New Jersey in Union County found Mr. Moncion guilty of first degree murder among other violent crimes, concluding that the petitioner had fired the shot that killed Sykes and attempted to murder Manning.  At trial, defense counsel claimed that an unidentified bystander fired the shots.  The trial court admitted the petitioner's sworn statement that he gave the police after being read *Miranda* warnings and executing an acknowledgment form and a waiver of rights.  The petitioner's statement alleged that "Sykes pulled out a black gun and another unidentified man who had braided hair also pulled out a gun."[7]  The statement also alleged that someone in the crowd across from Sykes's residence told him to run and as he ran, he heard gun

---

(Ra 4, 24:21-25)
> Even the lone defense witness, Dewey Manning did not refute these statements:
> | Q | What did you do then? |
> | A | We was walking towards the crowd and we saw J.R. in the crowd and somebody said, "Give me a gun, give me the gun." |
> | Q | Now, you said you were walking toward the crowd and is this a crowd that J.R. was standing in? |
> | A | Yes. |

(Ra 6, 36:9-13)
> Later, Manning testified to the following:
> | Q | How many shots had been fired? |
> | A | I think it was three. |

(Ra 6, 37:15-16)
> However, Manning did not know who actually fired the shots:
> | Q | Do you get closer, you and E Dog, do you walk closer up to J.R.? |
> | A | As soon as we heard somebody say "Give me the gun," we turned back around and started running. |
> | Q | Did you have a chance to see J.R.'s hand? |
> | A | No. |

(Ra 6, 69: 14-22)

[7]*New Jersey v. Moncion*, No. A-4619-96T4, at 3 (N.J. Super. Ct. App. Div. December 30, 1998).

shots[8], but the jury obviously did not agree with this version of the story.

Mr. Hassen Abdellah represented Mr. Moncion at trial.  According to his testimony at Mr. Moncion's trial for post-conviction relief, Mr. Abdellah "never actually got a written statement from Mr. Fontaine," a purported eyewitness to the murder (T36:6 to T38:11).  Mr. Abdellah's private investigator did try to contact Mr. Fontaine, but neither the investigator nor Mr. Abdellah went to Mr. Fontaine's home (T40:20 to T41:21).   Mr. Abdellah finally contacted  Mr. Fontaine approximately 18 months after the shooting when someone identifying himself as Alex Fontaine called him.  (T53:15 to T55:25).  In an affidavit, Alex Fontaine stated that he does not remember ever speaking to Mr. Abdellah.  (T17:16-25).[9]

Mr. Abdellah testified that in preparing for the trial, he "explained to [Mr. Moncion that] in New Jersey there's self-defense."  (Ra 16, T49:2 to 50:11).  Mr. Abdellah reasoned that if Mr. Moncion was not there, he "couldn't file self-defense because how can a person be defending themselves if they were not there." (T49:2 to 50:11).  He also testified that he discussed aggravated manslaughter, reckless manslaughter, and passion provocation manslaughter with the petitioner (Ra16, T50 to T51:19).

During the trial, a discussion involving any lesser included offenses took place in which Mr. Abdellah agreed with the Court who said "We talked about lesser included and apparently it's been agreed that there is no lesser included or aggravated manslaughter or reckless manslaughter, unless either side can show me any reckless conduct that can be attributable to the defendant."  (Ra 6,

---

[8]*Id.*

[9]In his affidavit, Fontaine flatly denies that he "received any telephone calls, letters or messages from Mr. Abdellah or anyone on his behalf."  (Fontaine Aff. ¶ 4, Ex. A attached to Response to Respondent's Answer, August 24, 2005).

T120:15-23).  The Court then continued adding, "Your defense is that although he might have been there earlier, he left before the shooting" to which Mr. Abdellah replied, "Yes."  (Ra 6, T120:24-25). Reenforcing this absence of evidence to support the inclusion of lesser-included offenses the court stated, "There's nothing to indicate that a), there was a fight where a gun discharged or some drunkeness, carrying on with a gun.  He is just denying the shooting and being there at the time of the shooting." Mr. Abdellah, "Yes." Specifically the Court continued, "[b]eyond that, the crimes you have that we have the following issues, which we discussed in chambers but I will put on the record now: they have, of course, the issue of flight.  The State alleges that the defendant, indeed, did the shooting then fled the scene. Defense contends that he left the scene before the shooting and therefore, it was not flight."

According to the defense's theory at trial, "the real issue in the case was ballistics." (T34:13 to T35:3).  Mr. Abdellah, however, did not hire a ballistic expert to assist his defense of Mr. Moncion because he "[d]idn't need one." (T34:13 to T35:3).  Instead, he "left the State to their proofs" to prove their case beyond a reasonable doubt  (T34:13 to T35:3).[10]

**PROCEDURAL HISTORY**[11]

On October 18, 1996, the Superior Court of New Jersey, Union County, Law Division convicted Mr. Moncion of murder of the first degree (count one) pursuant to *N.J.S.A.* 2C:11-3a among other crimes and aggregated the sentences of each to a total of thirty-five years in prison,

---

[10]The state court's factual findings are accepted as correct, absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).

[11]Unless otherwise noted, the procedural history was taken from *New Jersey v. Moncion*, No. A-6387-00T4 (N.J. Super. Ct. App. Div. Nov. 12, 2003).

thirty-two and one-half years without parole eligibility.[12]  The petitioner filed an appeal with the Superior Court of New Jersey, Appellate Division that subsequently affirmed the convictions and remanded the case to the trial court for resentencing on December 30, 1998 pursuant to *N.J.S.A.* 2C:44-5a.   After merging count three into counts one and two, the petitioner's modified sentence was for a term of thirty years with no parole eligibility.   Meanwhile, the petitioner filed for certification to the New Jersey Supreme Court, but the petition was denied on February 24, 1999.

The petitioner next filed a petition for post-conviction relief ("PCR") in the Union County Superior Court on December 3, 1999, presumably to meet the requirement that an applicant for a writ of habeas corpus exhaust all remedies available in the applicable state court, including federal and U.S. Constitution claims.  28 U.S.C.  2254(b)(1)(A); *see also Toulson v. Beyer*, 987 F.2d 984, 987-89 (3d Cir. 1993).  The trial court denied this petition on May 25, 2001, and the Superior Court of New Jersey, Appellate Division affirmed the decision on November 12, 2003.  Finally, Mr. Moncion filed a petition for certification to the New Jersey Supreme Court based on the constitutional claims but was denied certification on April 26, 2004.  The petitioner now comes before this Court claiming that he has exhausted his remedies and adds a claim of  deprivation of due process rights under the Sixth and Fourteenth Amendments due to   ineffective assistance of counsel during the state proceedings.

---

[12]Moncion's other convictions were for attempted murder (*N.J.S.A.* 2C:11-3a and *N.J.S.A.* 2C:5-1) (count two); second degree possession of a firearm for an unlawful purpose pursuant (*N.J.S.A.* 2C:39-4a) (count three); and third degree possession with of a handgun without obtaining a permit (*N.J.S.A.* 2C:39-5b) (count four).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") which became effective on April 24, 1996, amends the standards for reviewing state court judgments in federal *habeas corpus* petitions filed under section 2254.  Because Mr. Moncion filed his *habeas* petition on June, 17, 2004, this Court must apply the AEDPA standards to the disposition of this case.  The AEDPA significantly increased the level of deference the district court must give to the state court's legal and factual determinations.  *Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000) (citing *Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir.1996)), *cert. denied*, 532 U.S. 980 (2001).

Pursuant to the AEDPA, the district court may only consider a state prisoner's petitions when they are substantively based on violations of "clearly established federal law, as determined by the Supreme Court of the United States," or the state trial court's decision "was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d)(1),(2).  However, before a federal court may grant a petitioner's application for *habeas*, the petitioner must exhaust all available state remedies as to each constitutional issue presented to the district court. 28 U.S.C. § 2254(b)(1)(A).  A district court may deny an application for *habeas* relief on the merits even if the petitioner did not exhaust all state remedies.  *See* 28 U.S.C. § 2254(b)(2).  "The prisoner who chooses to go into federal court with unexhausted claims runs the risk that the district court will simply deny those claims on the merits, as it is permitted to do before the prisoner has had the opportunity to develop a record in state court." *Duncan v. Walker,* 533 U.S. 167, 191 (2001).

The state courts denied many of the petitioner's claims based on procedural defaults.  The opinion that follows individually addresses each of these defaults.  "A procedural default occurs

when a prisoner's federal claim is barred from consideration in the state courts by an 'independent and adequate' state procedural rule." *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (citing *Doctor v. Walters*, 96 F.3d 675, 683 (3d Cir. 1996)).  "To satisfy the exhaustion requirement, the petitioner must fairly present all federal claims to the highest state court before bringing them in federal court." *Taylor v. Horn,* 504 F.3d 416, 427 (3d Cir. 2007) (quoting *Stevens v. Del. Corr. Ctr.,* 295 F.3d 361, 369 (3d Cir.2002)) (internal quotation marks omitted).  The *habeas* petitioner has the burden to prove he has met the exhaustion requirement. *Landano v. Rafferty*, 897 F.2d 661, 668 (3d Cir.), *cert. denied*, 498 U.S. 811 (1990). Exhaustion is not a jurisdictional requirement; rather it allows state courts the first opportunity to pass upon federal constitutional claims. *Gilmore v. Ricci*, 2007 U.S. Dist. Lexis 81778.   The Supreme Court has previously held that district courts must dismiss mixed petitions containing both exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 522 (1982).  The Court of Appeals for the Third Circuit interpreted this statement as precluding mixed petitioners where the unexhausted claims that have been procedurally barred.  *Toulson*, 987 F.2d at 987.  Although we address the procedural defaults, we deny the petitioner's claims on the merits because they do not meet the exhaustion requirement of § 2254.  *Id.*

Under § 2254(d)(2), the state court's determinations "of factual issue[s] . . . shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  "The presumption applies to the factual determinations of state trial and appellate courts" if and when the determinations have been made. *Fahy v. Horn*, 516 F.3d 169, 181 (3d Cir. 2008) (citing *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001)*; Cf. Wiggins v. Smith,* 539 U.S. 510, 530 (2003).  The petitioner bears the burden of rebutting the presumption of correctness by proffering "clear and convincing" evidence contrary to the state court's factual findings. 28 U.S.C. § 2254(e)(1).

Legal determinations of a state court shall be upheld *unless* they "resulted in a decision that

(1) 'was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States', or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States. . . ." *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (quoting 28 U.S.C. § 2254(d)(1)).    The Supreme Court explained the difference between "contrary to" and an "unreasonable application" in the following manner:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 413.  Most notably, § 2254(d)(1) constrains the source of clearly established law to United States Supreme Court jurisprudence.  *Id.* at 412.  Because Mr. Moncion cannot establish that the state proceedings were either contrary to or involved an unreasonable application of clearly established Supreme Court precedent or, by clear and convincing evidence, that the state court made unreasonable factual determinations in light of the proffered evidence at trial, we deny the Petitioner's application for *habeas* relief.

### PETITIONER'S CLAIMS

Mr. Moncion offers several grounds for relief under section 2254.[13] The Petitioner's first argument is that he was "denied fundamental fairness" at trial (Pet. ¶12(A))  While denial of

---

[13]This Court reviewed and included claims provided in three separate documents: 1) The petitioner's *pro se* Notice of Petition for Writ of *Habeas Corpus* (filed June 28, 2004) (cited as Pet. Appl. for Writ of *habeas corpus*); 2) petitioner's *pro se* Memorandum of Law on Petition for Writ of *Habeas Corpus* (September 15, 2004) (cited as Pet. Br. in this opinion); and 3) petitioner's current counsel Charles P. Cohen's Response to Respondent's Answer to Petition for Writ of Habeas Corpus.

fundamental fairness is not a cognizable constitutional claim under federal law, this Court recognizes that a *pro se* pleading is held to less stringent standards than one prepared by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).[14] Therefore, we choose to characterize several of Mr. Moncion's purported reasons for relief as a denial of Sixth Amendment Rights as applied to the states through the Due Process Clause of the Fourteenth Amendment. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). The U.S. Supreme Court recognizes that the right to the effective assistance to counsel exists through the Sixth Amendment and "is needed, in order to protect the fundamental right to a fair trial." *Id.* at 684-86.

With respect to his trial attorney, the petitioner first argues that he was denied effective trial counsel because his attorney failed to request that the judge charge the jury with the lesser included offense of passion-provocation manslaughter. Second, the petitioner claims that because his attorney never called character witnesses at trial Mr. Moncion was denied effective counsel. Third, the petitioner claims that he was denied effective assistance of counsel for failure to call an expert witness. Fourth, petitioner argues that he was denied effective assistance of counsel for failure to call an alibi witness. Fifth, the petitioner avers that his attorney's failure to object to a "burden-shifting jury instruction" denied him effective assistance of counsel. Because the petitioner failed to show by "clear and convincing evidence" that his trial counsel was deficient as defined by United States Supreme Court precedent, we find that Mr. Moncion was not denied any rights as guaranteed by the Sixth Amendment.

Next, the petitioner argues that the trial court violated his rights by not charging the jury with

---

[14]Petitioner is now represented by counsel, but at the time of pleading to this Court, he was *pro se*. He was originally represented by Mr. Hassan Abdellah for the state trial court proceeding. Then, he was represented by Assistant Deputy Public Defender, Stephen Caruso and later Craig Leeds / Peter Garcia of the Public Defender's Office.

the lesser included offense of passion-provocation manslaughter.  Mr. Moncion further argues that the trial court's *voir dire* of an allegedly biased juror was patently inadequate and thereby denied the petitioner his right to trial by an impartial jury as guaranteed by the Sixth and Fourteenth Amendments.  Finally, petitioner claims that he was denied effective assistance of appellate counsel because his attorney neglected to assert the aforementioned *voir dire* issue on direct appeal.

At this juncture, it is highly relevant to point out that the petitioner failed to raise any of these claims during his initial appeal with the exception of the ineffective assistance of counsel claim for failing to request jury instructions for lesser included offenses and the related claim that the judge failed to issue these instructions.[15]  Because the petitioner failed to establish by "clear and convincing evidence" that the trial court's *voir dire* was impermissible under United States Supreme Court precedent or that the trial judge made an unreasonable factual determination with regards to the *voir dire*, we find that Mr. Moncion is not entitled to relief under section 2254.

## DISCUSSION

### A.    Ineffective Assistance of Trial Counsel

In order to receive *habeas* relief due to a denial of effective counsel, the petitioner-defendant bears the burden of proving that 1) counsel's performance was deficient; and 2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.  In order for ineffective assistance of counsel to be a cognizable *habeas* claim, the petitioner must show that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*  First, the petitioner must show that counsel's performance, evaluated from counsel's perspective, was unreasonable under prevailing professional norms "at the time of the

---

[15]*See generally New Jersey v. Moncion*, Dec. 30, 1998; *see also New Jersey v. Moncion*, Nov. 12, 2003, p. 10 n. 3

alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citing *Strickland*, 466 U.S. at 688-89).  In this respect, there is a strong presumption that counsel's performance was reasonable. *See Id.*   In order to satisfy the second prong of the *Strickland* test, the petitioner must show that there is a reasonable probability that but for counsel's deficient performance the outcome of the trial would have been different.  *Strickland*, 466 U.S. at 694-95 (Defendant must show that there exists a "reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt").  A "reasonable probability" is one sufficient to undermine the reliability of or confidence in the outcome.  *Id.* at 694.  Only the strict outcome-determinative test imposes a heavier burden on defendants than the "reasonable probability" test to overcome the presumption that the result of the proceeding was reliable.  *Id.* at 696-97.  A trial can be rendered unreliable, and therefore unfair, even if counsel's errors "cannot be shown by a preponderance of the evidence to have determined the outcome."  *Id.* at 694.

The *Strickland* test must be applied within the *Williams* pedagogy.  As the Supreme Court succinctly explained in *Williams*,

> [i]f a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a *preponderance of the evidence* that the result of his criminal proceeding would have been different, that decision would be ["contrary to" or] "diametrically different," "opposite in character or nature," and "mutually opposed" to our clearly established precedent because we held in *Strickland* that the prisoner need only demonstrate a "reasonable probability that . . . the result of the proceeding would have been different."  A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

*Williams*, 529 U.S. at 405-406 (quoting *Strickland*, 466 U.S. at 694) (internal citation omitted)

(emphasis added).    At all times the petitioner bears the burden of establishing a reasonable probability that but for counsel's deficiency, the outcome would have been different.  *Strickland*, 668 U.S. at 694.  This burden is not met where the defendant only shows "that the errors had some conceivable effect on the outcome of the proceeding."  *Id.* at 693.

### Failure to Request Jury Instructions for Lesser Included Offenses

The first question this Court must address is whether Mr. Moncion's trial counsel's failure to request a jury charge for the lesser included offenses of aggravated manslaughter, reckless manslaughter, and passion-provocation manslaughter denied the petitioner of effective assistance of counsel.  This Court must decide whether trial counsel's decision was reasonable in light of the facts of this case viewed at the time counsel made the decision.  *Strickland*, 466 U.S. at 688-89. According to the United States Supreme Court, strategic decisions of attorneys are "virtually unchallengeable" if they are made after a thorough investigation of the relevant law and facts of the case.  *Strickland*, 466 U.S. at 690.  However, a thorough investigation is not necessary.  *Id.* at 690-91.  "When a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."  *Id.*

The record is not in the petitioner's favor under this precedent.  It strongly supports a conclusion that trial counsel made a strategic decision not to request lesser-included offenses in the instructions to the jury.  Trial counsel explained at the PCR motion hearing that he discussed the lesser included offenses with his client.  (Ra 16, Motion for Post Conviction Relief, p. 50, 14-21). Furthermore, he stated at the same hearing that such a charge would be "inconsistent with the main defense I wasn't there . . . ."  (Ra 16, Motion for Post Conviction Relief, p. 51, 11-16).  The trial proceedings corroborate this testimony, trial counsel having discussed lesser-included jury

instructions with the trial judge.  (Ra 6, T120:15-23).

Specifically, the trial court counsel's decision cannot now be shown to be unreasonable where he consciously decided that arguing for a lesser-included offense would reduce the jury's confidence in the "I wasn't there" defense.  In a situation where the sole defense is one of "I wasn't there," it is reasonable for an attorney not to request the jury be charged with an affirmative defense which inherently admits the defendant's presence at the scene of the crime.  Consequently, the petitioner has failed to show that trial counsel's performance was deficient.[16]

Court need not address whether trial counsel's actions could have affected the outcome of this case since both prongs of an ineffective assistance of counsel claim must be satisfied. *Strickland*, 466 U.S. at 687. Moreover, the New Jersey Supreme Court's affirmation of the decision to deny petitioner's claim of ineffective assistance of counsel for failing to request the lesser-included offenses is consistent with this Court analysis of *Strickland's* requirement that the error rises to a violation of clearly established Federal law.  The petitioner's claim fails as he did not demonstrate that the state courts reached "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

---

[16]The New Jersey Supreme Court explained that in one its earlier rulings it "held that the fact that [a] defendant's position at trial was totally inconsistent with a manslaughter verdict did not deprive him of the right to have that lesser offense submitted to the jury, and that it was reversible error on the part of the trial court *upon request*, to refuse to charge such lesser offense." *New Jersey v. Choice*, 98 N.J. 295, 298 (N.J. 1985) (citing *New Jersey v. Powell*, 84 N.J. 305 (N.J. 1980)).  That Court clarified this holding directing its lower courts "to instruct the jury on lesser-included offenses *only* if counsel requests such a charge and there is a rational basis in the record for doing so or, in the absence of a request, if the record clearly indicates a charge is warranted." *New Jersey v. Denofa*, 187 N.J. 24, 42 (N.J. 2006) (citing *New Jersey v. Choice*, 98 N.J. 295, 298-99 (N.J. 1985)).

Even this holding, one that is perhaps more in favor of a defendant than the Supreme Court ruling in *Schad* that does not clearly apply to non-capital cases, would not persuade this Court.  Here, there was no request such a charge and since the defense strategy was one of "I wasn't there," the instructions given to the jury did not warrant a lesser charge.

of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(1),(2).

Similarly, the petitioner argues that his trial counsel should have objected to the final jury instruction since it lacked lesser-included charges to be considered by the jury.  As just discussed, this Court has found trial counsel's decision not to pursue lesser-included offenses to be a reasonable trial strategy.  However, petitioner cites to trial counsel's statement during the PCR hearing in which he claims *not* to have "consider[ed] during the course of the trial, after hearing the state's proof, to request a jury charge of passion provocation manslaughter."  (Ra 16, 39:13-17).  This statement by itself does not necessarily mean that trial counsel never weighed the unfavorable evidence in the trial against the defense being presented.  It can also mean that given the non-presence defense, counsel felt that his client may win the case and that any late changes to the jury instructions would only prejudice his client.  The petitioner presents no evidence to the contrary and therefore this argument must also fail.  The petitioner references *Johnson v. Zerbst*, 304 U.S. 458, 462-63 (1938), for the proposition, that, in the petitioner's words, "[w]here the doctrine supporting [the defendant's] rights has any complexities, the untrained Defendant is in no position to proffer an adequate defense."  The *Zerbst* court did state that a defendant "requires the guiding hand of counsel at every step in the proceedings against him" *Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 68-69 (1932)).  This notable concept has no relevance to deciding this case because the petitioner provides this Court with no indication that his counsel did not assist at every step during the trial.  *Zerbst* merely explains the importance of counsel as part of its main discussion as to whether the defendant in that case intelligently waived his right to counsel.  *Id.* at 469.

Because an instruction of a lesser included offense is not clearly required by due process, and

because the actual jury charge was consistent with the defendants's theory of the case, we do not find trial counsel's actions objectively unreasonable.  We therefore deny Mr. Moncion's request for *habeas* relief on this ground.  Moreover, questions relating to jury charges are normally matters of state law and are not cognizable in federal habeas review. *Abdullah v. Moore*, 2005 U.S. Dist. LEXIS 18411, fn. 13 (D.N.J. 2005) citing *Engle v. Isaac*, 456 U.S. 107, (1982); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 309 (3d Cir.), cert. denied, 502 U.S. 902, 116 L. Ed. 2d 232, 112 S. Ct. 280 (1991).

### Failure of Counsel to Call Character Witnesses

Mr. Moncion's second ground for vacating the trial court's decision stems from  counsel's failure to call character witnesses.  On appeal from the denial of post-conviction relief, the Superior Court of New Jersey, Appellate Division denied this claim without explanation finding it "to be without merit." *New Jersey v. Moncion*, No. A-6387-00T4 (N.J. Super. Ct. App. Div. Nov. 12, 2003).  Therefore, we address this claim, as we did the previous claim, under *Strickland* and its progeny.  While we find counsel's performance to be unreasonable and therefore deficient, we do not find that the deficiency sufficiently prejudiced the defense.  The decision of whether to call character witnesses is generally a strategic choice made by counsel, and therefore is entitled to a "heavy measure of deference."  *Strickland*, 466 U.S. at 690-91).  However, such deference is not unlimited:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.*

In the present case, it is clear that counsel made no effort to investigate potential character witnesses. While we are required to give deference to counsel's judgments, we are not prepared to say that counsel's investigation is reasonable under these circumstances. *Laird v. Horn*, 159 F. Supp. 2d 58, 113 (E.D. Pa. 2001) ("counsel's failure to assert a specific defense cannot be characterized as a 'strategy' unless counsel has investigated and consciously rejected" such a defense) (citing *United States v. Kauffman*, 109 F.3d 186, 190 (3d Cir. 1997)). Because the petitioner's defense relied on the state being unable to prove its case beyond a reasonable doubt, counsel's failure to mount an investigation for character witnesses is unreasonable. *See Id.* Under Supreme Court precedent regarding character witnesses, defendants may introduce favorable testimony with respect to their character possibly enabling a jury to infer that they "would not be likely to commit the offense charged." *Michelson v. United States*, 335 U.S. 469, 476 (1948). The Supreme Court felt strongly that this testimony "may be enough to raise a reasonable doubt of guilt," enough so that it ruled that the federal courts should instruct juries to this effect, at least in federal court cases. *Id.* The Supreme Court however restricted the definition of "character evidence" to evidence of a defendant's "reputation." *Id.* It detailed the following to instruct the lower courts on how to use character evidence:

> The witness may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental and moral traits; no can he testify that his own acquaintance, observation, and knowledge of defendant leads to his own independent opinion that defendant leads to his own independent opinion that defendant possesses a good general or specific character, inconsistent with commission of acts charged. *The witness is, however, allowed to summarize what he has heard in the community*, although much of it may have been said by persons less qualified to judge than himself.

18

*Id.*

These character witnesses must first be shown to know the respective defendants' communities in order to qualify as witnesses. *Id.* at 478. Furthermore, once they testify, the prosecution may cross-examine these witnesses or present other contradictory testimony, even if it is "not well-grounded." *Id.* at 479. These proofs of credibility are designed to prevent defendants "from profiting by a mere parade of partisans." *Id.* Nonetheless, the petitioner's request for the writ fails because he makes no showing that character witnesses would have been helpful in establishing a non-presence defense (Ra 6, T120:24-25). Therefore, it is impossible for this Court to determine that but for counsel's lack of investigation the outcome would have been different. Character evidence does not entitle a defendant to a verdict of not guilty. *United States v. Logan*, 717 F.2d 84, 90 n. 11 (3d Cir. 1983) (citing *United States v. Quick*, 128 F.2d 832, 835 (3d Cir. 1942)).

In this case, Mr. Moncion offers no potential character evidence which could reasonably serve as a basis for creating reasonable doubt or for impeaching any state witness. The record is devoid of any potential character witnesses or what they might have said at trial. As a consequence Mr. Moncion presents only a speculative effect on the outcome which is insufficient to meet his burden of demonstrating a "reasonable probability" that but for counsel's deficiency, the outcome would have been different. *Strickland*, 668 U.S. at 694. This burden is not met where the defendant only shows "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

Furthermore, we fail to see how a character witness would advance the defense's theory of the case. The defense solely relied on the state being unable to prove its case beyond a reasonable doubt (Ra 16, T35, 2-3). Given the defendant's non-presence defense, and Mr. Moncion's abstention from testifying on his own behalf, the circumstances implied only the possibility of character

19

witnesses testifying to Mr. Moncion's law-abidedness.  Assuming *arguendo* that a character witness does exist we do not see, in light of overwhelming eye-witness testimony to the contrary, how character testimony of law-abidedness would have created reasonable doubt as to whether the petitioner intentionally caused the decedent's death. *Supra*, fn. 7.  In short, the defense's strategy did not implicate a character witness's reasonable utility, and trial counsel's failure to investigate potential witnesses did not therefore unconstitutionally prejudice the defense. For the reasons stated above, we deny the petitioner's application for *habeas* relief on this ground.

<u>**Failure of Counsel to Call an Expert Witness**</u>

Petitioner next argues that he was deprived of effective assistance of counsel because counsel failed to call a ballistics expert.  This court first notes that the petitioner did not raise this issue until the PCR hearing. *See State PCR Appeal Decision,* pp. 9, 10 n. 3, Oct. 29, 2003].  The NJ Appellate Division declined to address this issue.  *Id.*  Assuming the petitioner did not exhaust his remedies on this issue below, his "application for writ of habeas corpus may be denied on the merits."  28 U.S.C. § 2254(b)(2).  In light of this, we review the petitioner's contention and still find the argument without merit.  In order to establish this as a deficiency, the petitioner relies on a single statement made by trial counsel.  At the Motion Hearing for Post Conviction Relief, trial counsel testified that the "real issue in the case was ballistics." (Petr.'s Br. at 7.) (citing T34:13-17.) Again, we analyze this issue pursuant to *Strickland* and its progeny.

Trial counsel's actions may have been unreasonable.  The petitioner points out that trial counsel did not hire a ballistics expert but conceded that ballistics evidence was a critical element of the case. (Ra 16, 34:18-24).  Trial counsel explained that he "didn't need" his own ballistics expert and left the State to prove its case "beyond a reasonable doubt."  (Ra 16, 34:22 through 35:3).

Even assuming counsel was deficient in his performance, the petitioner has not met his

burden of showing prejudice.  Mr. Moncion offers neither the name of, nor potential testimony from, any ballistics expert, and he therefore fails to show that there is a reasonable probability that but for the absence of expert testimony, the case may have been decided differently.  Even offering the testimony of a ballistics expert may still not be sufficient to overcome this burden.  *See, e.g. Rainey v. Diguglielmo*, No. 05-1334, 2006 WL 2588747, at **6-7 (E.D. Pa. Sept. 7, 2006) (upholding PCRA court's decision that trial counsel's decision not to present countervailing ballistics expert testimony was "strategically defensible" even though the petitioner presented a report indicating that it was unlikely the petitioner's gun fired the ammunition used).  Without such information provided to this Court, it is impossible for us to determine whether Mr. Moncion was deprived of counsel as guaranteed by the Sixth Amendment.  Because Mr. Moncion has not met his burden of production as to this issue, we deny the petitioner's application for *habeas* relief on this ground.

## Failure of Counsel to Call an Alibi Witness

Mr. Moncion next argues that he was denied effective assistance of counsel because his attorney failed to call a potential alibi witness, Alex Fontaine.  This court will again evaluate such a claim pursuant to *Strickland* and its progeny.  Because we find that trial counsel's decision not to call Fontaine was not deficient, we deny the petitioner's application for *habeas* relief on these grounds.

The record indicates that trial counsel was aware of Fontaine.  Trial counsel maintains that he spoke to Fontaine just prior to the trial, but Fontaine does not remember any conversations with trial counsel at that time. [Ra 16, Abdellah, then Fontaine].  In either case, trial counsel's performance is deficient under *Strickland* only where he fails "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  466 U.S. at 690-91.

21

Counsel's decision not to further investigate Mr. Fontaine and not call Mr. Fontaine as a witness is entitled to a "heavy measure of deference." *Id.* Even assuming that no conversation took place prior to the trial, we conclude that the petitioner has not provided sufficient evidence to overcome the presumption that counsel's decision at the time of the alleged error was unsound as a matter of strategy. *See Strickland*, 466 U.S. at 689 (reasoning that it is very easy for a court to conclude that counsel's actions were unreasonable after the defense proved unsuccessful; and that the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.") (internal quotations omitted)).

We can only speculate as to the reasons trial counsel did not follow up with or call Fontaine as a witness. Fontaine admits that, on the night of the shooting, he told police that he "thought [the petitioner] had a gun before the shooting." (Ra 16, 13:11-1). Fontaine's later testimony at the PCR hearing described the petitioner walking, rather than running, "five or six houses" away just after the shooting. (Ra 16, 10:1). During petitioner's appeal from the PCR hearing, the New Jersey Appellate Division gave a very plausible explanation for trial counsel's decision at the time given these facts:

> The PCR judge did not believe Fontaine and accepted the testimony of defendant's counsel. He found Fontaine's testimony to be contrived. We understand . . . trial counsel's decision not to call Fontaine as a defense witness. Fontaine, under oath, would have to explain to the jury why his sworn incriminating statement was false. He then would have to testify convincingly to the contradictory facts to which the PCR judge found incredible.

*State v. Moncion*, PCR Hearing, App. Div., 11-12. This Court would also like to point out that the prosecution did not call this witness and so trial counsel had no reason to investigate a witness that based on police records, could only hurt his case. Under these circumstances, counsel's actions or inactions were reasonable.

Moreover, given the fact that Mr. Fontaine did not directly witness the shooting, and in light of substantial eye-witness testimony showing that Mr. Moncion shot and killed the decedent from eye witnesses, Anthony Brown and Tyrone Bell,(*Supra*, footnote 7), and the petitioner again fails to establish that but for counsel's failure to utilize Mr. Fontaine's testimony the outcome would have reasonably been different.  The Court denies petitioner's request for relief on this ground.  _____

**B.**    **Failure to Instruct the Jury on Lesser Included Offenses**

Next, the discussion turns back to the instructions or the lack thereof given at trial.  This time the discussion deals with alleged errors by the judge.  The petitioner argues that the trial judge must give lesser included offenses to the jury under *Vujosevic v. Rafferty*, 844 F.2d 1023, 1027 (3d Cir. 1988).  The lesser included offenses that petitioner asserts were applicable include aggravated manslaughter, reckless manslaughter, and passion-provocation manslaughter.

*Vujosevic* extended the holding of *Beck v. Alabama* applying the jury instruction requirements to non-capital cases as well as to capital cases.  *Id.* (citing *Beck*, 447 U.S. 625 (1980)(holding that in a capital case, the jury must be instructed of lesser-included noncapital offenses if the evidence supports a verdict under those charges)).  However, *Vujosevic* specifically held that a court "must give a *requested* instruction on lesser included offenses where it is supported by the evidence." *Id.*  Here, trial counsel did not request lesser-included offenses to be given and so we never reach the *Vujosevic* holding.

Assuming that trial counsel had requested such an instruction, this Court may only grant a writ of *habeas corpus* where the state court applies a law contrary to or unreasonably applies its factual findings to Supreme Court precedential law.  *Schad v. Arizona* is the existing Supreme Court law in this area.  501 U.S. 624 (1991).  As interpreted by the Third Circuit, *Schad* holds "that, in cases involving offenses on a ladder, if the trial court wrongfully refuses to charge the offense at the bottom

rung, that error is harmless provided the jury returns a guilty verdict for an offense higher up rather than for an intermediate offense which was also charged," where the evidence would have supported the lesser-included offense. *Geschwendt v. Ryan*, 967 F.2d 877, 884-85 (3d Cir. 1992) (reasoning that even if the jury was "not . . . given the option of returning a verdict of not guilty by reason of insanity, its guilty verdict is similarly reliable because the jury did not return a guilty verdict for either of the lesser included offenses, third degree murder or voluntary manslaughter"). *Schad* was a capital case. 501 U.S. at 629. It is unclear whether or not the *Schad* holding applies to non-capital cases. *See Kontakis v. Beyer*, 19 F.3d 110, 119 (3d Cir. 1994) (declining to determine whether the *Beck* holding applied in *Schad* applies to non-capital cases); *but cf. Nesmith v. Cathel*, No. 05-4069, 2007 WL 2247899, at *7 (D.N.J. Aug, 2, 2007) (stating firmly that "the Supreme Court has never held that the Due Process Clause guarantees the right of a defendant to have the jury instructed on a lesser included offense in a non-capital case . . . ."). The instant case is a non-capital case and so a failure to apply lesser-included offenses, without further direction from the high court, would not be contrary to existing Supreme Court precedent. Therefore, this Court finds no reason to grant *habeas* relief to the petitioner on this ground.

Moreover**,** questions relating to jury charges are normally matters of state law and are not cognizable in federal habeas review. *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 309 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991). Hence, a habeas corpus claim could lie only where the jury instruction is "so prejudicial as to amount to a violation of due process and fundamental fairness will a habeas corpus claim lie." *Id*. A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense. . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997). This is because district

courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it" *Id.* When a habeas petitioner challenges jury instructions given in a state criminal proceeding, the only question for [the federal court] is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction . . . [the federal court] inquire[s] "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. And [the court] also bear[s] in mind . . . that [the federal courts] "have defined the category of infractions that violate 'fundamental fairness' very narrowly." "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Estelle v. McGuire*, 502 U.S. 62, 72-73 (1991) (citations omitted).

Here, the lesser included offenses argued by petitioner include aggravated manslaughter, reckless manslaughter, and passion-provocation manslaughter**,** as discussed above, there was no basis in the facts of the case as argued by petitioner, for such an inclusion. His defense was based on the allegation that he left just prior to the shootings occurrence. The record does not support such charges. As a consequence petitioner has failed to establish that his entire trial and conviction was so prejudiced by the charges as to violate the principles of fundamental fairness and due process.

Failure of Counsel to Object to "Burden Shifting" Instructions

Petitioner's raises an incomprehensible claim against his trial counsel for failing to "object" to a "burden shifting" instruction set forth in the jury charge. As stated by petitioner, "[t]he Court wrongly instructed the jury that the Defendant had the burden of proving that he did not possess the murder weapon with specific unlawful purpose of taking life or causing serious bodily injury resulting

in death."

Presumably the petitioner is referencing the trial court Judge's instruction on intent with respect to possession of the gun charge. In pertinent part, here is what the trial Court instructed:

> The defendant's purpose or conscious objective to use a firearm against a person of another may be found to exist any he's in possession of that object and need not have been his original intent in possessing the object.

> In this case the unlawful purpose alleged by the State was to point the gun at and fire the gun at Mr. Manning and Mr. Skyes. Of course the defense denies that particular event. Defense contends that he never had the handgun that night, was never present at the time of the shooting, indeed, was walking away at the time the shooting occurred. That is a factual dispute you must resolve on this issue.

The Court continues by emphasizing the following:

> To reiterate, the four elements the State must prove to you beyond a reasonable doubt on this issue are as follows: One, that indeed there was firearm. Two, that the defendants possessed the firearm. Three, that he possessed the firearm with a purpose to use it unlawfully against Mr. Dewey Manning and / or Mr. Edward Skyes. Four, that his purpose, indeed was to use the firearm unlawfully toward those people." (Ra 7, 32 through 34)

In reviewing the jury charge, the Court was unable to locate a statement that improperly shifted the burden of proof from the state to the Defendant. The trial court consistently instructed the jury that the burden of persuasion and production rested with the state.

Assuming arguendo, that petitioner's argument is focused on counsel's alleged failure to object to the non-inclusion of lesser included offense instructions. As stated above, this claim lacks merit. The trial court even tailored the burden of production for the state, emphasizing the State's

burden of production specific to the case, "[q]uite clearly the facts in this case contain an allegation that this defendant fired a bullet that caused the death of Mr. Skyes and that bullet was a 38 caliber bullet. If you find he did not fire a 38 caliber bullet through some weapon, then he cannot be convicted of this crime." (Ra 7, 42:11-17)

The trial court stated that the State had the burden to prove to the jury each element of the four crimes with which they charged the petitioner (Ra 7, 22:13-21; 29:22 through 30:9; 30:16-23; 35:7-11).[17]  Since the petitioner has not met his burden to prove the elements of ineffective assistance of counsel, his application for *habeas* relief is denied on this ground.

**C.**    ***Voir Dire* of Juror Number 10**

The petitioner next argues that the *voir dire* of Juror Number 10 was patently inadequate and "insufficient to determine the juror's latent bias." (Petr.'s Br. at ¶ 12(C)).  We disagree with the petitioner and find that the trial court's *voir dire* of Juror Number 10 was constitutionally adequate.[18] A criminal defendant has a right to an impartial jury pursuant to the Sixth and Fourteenth Amendments to the United States Constitution. The right to an impartial jury is applicable to the States through the Fourteenth Amendment. See *Morgan v. Illinois*, 504 U.S. 719, 726 (1992). Even though the Constitution requires an impartial jury, the Supreme Court has not dictated bright-line rules for the adequacy of the *voir dire*.  Absent allegations of racial or ethnic bias or a capital punishment issue, the Supreme Court consistently has held that trial judges in criminal matters are afforded substantial discretion in determining whether a juror is fit to make an unbiased

---

[17]The State charged the petitioner with murder, attempted murder, possession of a weapon with purpose to use it in an unlawful manner against the person of another, and possession of a handgun without first having obtained a permit to carry that handgun (Ra 7, 5).

[18] We apply deference to the state court's determination on this issue even though it was never reached on the merits. *Supra* note 3.

determination. *See Risatano v. Ross*, 424 U.S. 589, 595 (1976); *and Mu'min v. Virginia*, 500 U.S. 415, 422 (1991).  Trial judges are afforded such discretion because "the determination of impartiality, in which demeanor plays such an important part, is particularly in the province of the trial judge." *Risatano*, 424 U.S. at 594.  Furthermore, jury selection is a factual determination made by the trial judge, and therefore is subject to a presumption of correctness during federal *habeas* review. *See Wainwright v. Witt*, 469 U.S. 412, 428 (1985); *and* 28 U.S.C. § 2254(e)(1).  Even with racial issues in capital crimes, which are held to a constitutionally higher standard than the issue presented here, the judge must answer the same question, "is the juror to be believed when he says he has formed no opinion about the case." *Mu'min*, 500 U.S. at 425.

The Constitution requires an impartial jury, but it does not dictate a "catechism" for jury voir dire. *Morgan*, 504 U.S. at 729. Consequently, under federal law, the trial courts have considerable discretion in conducting voir dire; however, trial courts must make inquiries relevant to disclose actual bias and satisfy the demands of fairness. See *Butler v. City of Camden*, 352 F.3d 811, 819 (3d Cir. 2003).

In the present case, Juror Number 10 operated a shop in the neighborhood where the killing took place, and he expressed some fear about potential repercussions.  However, the juror was unaware if the defendant or any of the witnesses had ever shopped in the juror's store.  When questioned by the judge about bias, the juror stated that he was more concerned about repercussions. Therefore, the judge was required to make a determination as to whether the defendant had already formed an opinion as to the case, and whether the juror would be capable of weighing the evidence as presented in court without bias.  It is clear the trial judge decided that Juror Number 10 was capable of rendering an unbiased verdict, and the petitioner offers no evidence to the contrary.  Furthermore, the trial judge permitted the counsel to question the juror yet both parties declined.  Mr. Moncion's

counsel's decision not to personally question a juror reinforces the trial judge's determination and persuades this Court to deny the petitioner's application for *habeas* relief on this ground.  Likewise, the judge repeatedly instructed the jury to remain impartial, and it is presumed that the jury followed these instructions. *See United States v. Olano*, 507 U.S. 725, 740 (1993) (stating that courts should assume that jurors "attend closely to the particular language of trial court's instructions in criminal cases").

This Court concludes, based on the record and petitioner's lack of evidence as to jury bias, that petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Accordingly, this ground for a writ of habeas corpus will be denied.

**D.      Ineffective Assistance of Appellate Counsel**

The petitioner's final argument in favor of granting the writ stems from appellate counsel's failure to raise the *voir dire* of Juror Number 10 issue during Mr. Moncion's direct appeal.[19]  First of all, we point out that the petitioner failed to raise this issue on his initial appeal to the New Jersey Appellate Division and is thus procedurally barred under New Jersey state law. *See State v. Moncion*, at 10 (NJ App. Div. Oct. 29, 2003).  This Court will address the petitioner's claims on the merits and deny the petitioner's application for *habeas* relief irrespective of this procedural bar.   The *Strickland* standard applies to appellate counsel as well as trial counsel, and we therefore analyze this

---

[19] Again, we give the state court deference on this issue. *Supra* note 3.

issue under *Strickland* and its progeny. *See generally Evitts v. Lucey*, 469 U.S. 387 (1985) (deciding an ineffective assistance of appellate counsel issue under the *Strickland* two-part test).  As stated above, the petitioner must show that appellate counsel's performance on appeal was deficient as measured by professional norms at the time of the alleged error and that but-for appellate counsel's deficient performance there is a reasonable probability that the outcome of the appeal would have been different.  *Strickland*, 466 U.S. at  694-95.  Furthermore, appellate counsel's performance is entitled to great deference, yet "an appellate advocate may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner.'" *United States v. Cook*, 45 F.3d 388, 394-95 (10th Cir. 1995) (defining "dead-bang" winner as "an issue which was obvious from the trial record . . . and one which would have resulted in reversal on appeal.").  Likewise, the United States Supreme Court examining appellate counsel's omissions has determined that "experienced advocates . . . emphasize the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Thus, it is clear that appellate counsel is afforded great deference as to strategic decisions.

Mr. Moncion specifically alleges that his PCR counsel at the initial hearing was deficient for failing to argue that the *voir dire* of Juror Number 10 was inadequate.  For an attorney at any stage of litigation, where the attorney has reviewed the law and the facts and made a strategic decision, that decision is virtually unassailable. *See Wiggins*, 539 U.S. at 521-22.  Petitioner admits that his PCR counsel raised the "issue of the trial Judge's voir dire of juror Rivezzi in his Petition for Post-Conviction Relief."  (Pet. Br. at 13).  His decision not to raise the issue during the oral hearing would certainly be an objectively reasonable one for an attorney during such a hearing to avoid "run[ning] the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." *Barnes*, 463 U.S. at 753.

30

Furthermore, as discussed in the previous section, the voir dire of this juror did not prejudice the defense and clearly would not have been a "dead-bang winner." For that matter, none of the omissions by appellate counsel would have been "dead-bang winner[s]. *Cook,* 45 F.3d at 394-95 (internal quotations omitted).

Because appellate counsel was not unreasonable in not forwarding the *voir dire* issue, the petitioner does not satisfy the first prong of the *Strickland* test. However, since this Court has already noted that trial counsel's decision on this matter did not prejudice defendant, there is no reason to discuss appellate counsel's failure to discuss the issue with his client. Furthermore, the petitioner offers no evidence that the decision by the state court of appeals was an unreasonable application of or contrary to Supreme Court precedent. For these above mentioned reasons, we deny Mr. Moncion's application for *habeas* relief on this ground.

## CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## <u>CONCLUSION</u>

For the reasons discussed above this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue. An appropriate order follows.


_s/Peter G. Sheridan_
PETER G. SHERIDAN, U.S.D.J.

June 2, 2008